# United States Court of Appeals
## For the First Circuit

No. 25-1801

BRUNO PROJECT RESCUE INC., a 501(c)(3) corporation; ANNIE'S
FAITH FOUNDATION, a 501(c)(3) corporation; CARIBBEAN CANINE
CONNECTION CO., a 501(c)(3) corporation; ARUBA FLIGHT VOLUNTEERS
INC., a 501(c)(3) corporation, d/b/a New Life for Paws
Foundation; POTCAKE PLACE K9 RESCUE (USA) INC., a 501(c)(3)
corporation; SAVE THE SATOS, a 501(c)(3) corporation,

Plaintiffs, Appellants,

v.

CENTERS FOR DISEASE CONTROL AND PREVENTION; UNITED STATES
DEPARTMENT OF HEALTH AND HUMAN SERVICES; JIM O'NEILL, in the
official capacity as Director of the Centers for Disease Control
and Prevention,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise J. Casper, U.S. District Judge]

Before

Montecalvo, Lynch, and Dunlap,
Circuit Judges.

Aaron M. Katz and Aaron Katz Law LLC for appellants.

Brian J. Springer, Attorney, Appellate Staff, Civil Division,
United States Department of Justice, with whom Brett A. Shumate,
Assistant Attorney General, Leah B. Foley, United States Attorney,
and Thomas Pulham, Attorney, Appellate Staff, Civil Division,
United States Department of Justice, were on brief, for appellees.

July 13, 2026

**DUNLAP**, **Circuit Judge**.    Plaintiffs-Appellants are organizations that rescue stray puppies on Caribbean islands and place the puppies with adoptive families in the United States. Plaintiffs challenge a regulation issued by the Centers for Disease Control and Prevention ("CDC"), an agency within the United States Department of Health and Human Services.    See Control of Communicable Diseases; Foreign Quarantine: Importation of Dogs and Cats, 89 Fed. Reg. 41726 (May 13, 2024) (codified at 42 C.F.R. pt. 71).    The regulation requires that "[a]ll dogs presented for admission into the United States must be at least six (6) months old at the time of their arrival into the United States," and that dogs not meeting this criterion "shall be denied admission and returned to the country of departure."    42 C.F.R. § 71.51(f) (2026).    Plaintiffs claim that this age requirement -- as applied to dogs imported into the United States from Caribbean islands -- exceeds the CDC's authority under 42 U.S.C. § 264(a) and is otherwise arbitrary and capricious under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2).    The district court granted the CDC summary judgment on Plaintiffs' claims.    After careful review, we discern no error in the district court's judgment.    We therefore affirm.

## I.

The dog-maintained rabies virus variant (sometimes referred to by the acronym "DMRVV," but which, for purposes of

simplicity, we will refer to as "rabies") is a deadly infectious disease that can be transmitted from an infected dog to any mammal and, "once clinical signs appear, . . . is almost always fatal." 89 Fed. Reg. at 41726, 41754. "There is no treatment available for persons ill with rabies." Id. at 41754. Although the United States has been declared rabies-free since 2007, id. at 41726, rabies remains a "serious public health threat in . . . more than 100 countries" and "kills approximately 59,000 people, mainly children, per year globally from dog bites." Id. at 41754. Addressing reintroduction of rabies is costly and difficult. Id. at 41756-57. Thus, the CDC seeks to prevent reintroduction of rabies into the United States -- as has happened before, in 1988. See id. at 41754; see also id. at 41756-57.

The United States has regulated the import of dogs into the United States and has imposed rabies vaccine requirements since at least 1956. See Revision of Chapter, 21 Fed. Reg. 9805, 9879 (Dec. 12, 1956). As updated in 1985, see Foreign Quarantine, 50 Fed. Reg. 1516 (Jan. 11, 1985), the relevant regulation established that -- except for certain dogs that were admitted into the country for research purposes, were under six months old and had never been in a country with rabies, or were at least six months old and had not been in a country with rabies in the past six months -- a dog could not enter the United States without a "valid rabies vaccination certificate" that showed that the dog had been

vaccinated when the dog was at least three months old and at least thirty days before arrival at the port of entry. 42 C.F.R. § 71.51(a), (c) (1985).

Regulations of dog importations have changed over the years. In 2021, the CDC temporarily suspended dog imports from countries that the CDC designated as rabies high-risk countries on account of rabid dogs with fraudulent paperwork entering the United States from those countries. See Temporary Suspension of Dogs Entering the United States From High-Risk Rabies Countries, 86 Fed. Reg. 32041 (June 16, 2021).

At issue in this case, the CDC again revised its dog import regulations through notice-and-comment rulemaking in 2024, allowing its temporary suspension of dog imports from rabies high-risk countries to expire and requiring, among other things, that all dogs "arriving in the United States be at least six months of age."[1] 89 Fed. Reg. at 41727, 41738. The regulation's stated

---

[1] The CDC also required that all dogs arriving in the United States be microchipped and that all dog importers submit a CDC dog import form for each dog imported to help officials verify that the dogs presented for admission are the same dogs identified in their accompanying documentation. Control of Communicable Diseases; Foreign Quarantine: Importation of Dogs and Cats, 89 Fed. Reg. 41726, 41727-28 (May 13, 2024) (codified at 42 C.F.R. pt. 71). For dogs imported from countries designated as rabies high-risk countries, the CDC required that importers "submit a standardized vaccination form verifying the rabies vaccination status of the dog." Id. at 41728. If the dogs imported from rabies high-risk countries were not vaccinated in the United States, the CDC also required that importers must "have their dog(s) undergo a veterinary exam and revaccination with a

purpose was to "prevent the reintroduction and spread of" rabies and to "prevent and deter the importation of dogs with falsified or fraudulent rabies vaccine documentation." Id. at 41726. The CDC determined that the regulation helps confirm that the dog is old enough to have had an effective vaccine, because a dog's age is most easily assessed after six months, as a dog has lost its baby teeth by that time. Id. at 41765-66. According to the CDC, the age requirement helps officials determine that "the dog presented matches the documentation presented, particularly the age listed for the dog, and that the dog is old enough to have been adequately vaccinated for rabies." Id. at 41766. Further, the CDC observed that the age requirement would "align[] with USDA importation rules, ease[] enforcement of the vaccination requirements, and reduce[] opportunities for fraud." Id. Finally, the CDC determined that screening for rabies is easier after six months due to the difficulty at younger ages of distinguishing between uncoordinated movements that are simply part of normal puppy behavior and those that are due to rabies. Id.

_____

USDA-licensed rabies vaccine at [a] CDC-registered [animal care facility]" and must either "obtain a rabies serologic test from a CDC-approved laboratory for their foreign-vaccinated dogs demonstrating adequate titer levels" or "have their dog remain under quarantine at the facility for 28 days after revaccination or until confirmation of adequate rabies serologic test from a CDC-approved laboratory is obtained, whichever occurs first." Id. at 41728-29.

This age requirement substantially affects Plaintiffs' dog-rescue efforts in the Caribbean islands, as Plaintiffs assert that they have been harmed because they now have to care for rescued puppies on the islands until the puppies reach six months old and that fewer people in the United States want to adopt six-month-old dogs (causing Plaintiffs to experience difficulty fundraising for their rescue efforts). Accordingly, Plaintiffs brought this lawsuit under the APA, alleging that the age requirement exceeds the CDC's statutory authority and is otherwise arbitrary and capricious. After the parties cross-moved for summary judgment, the district court granted judgment to the CDC. The court reasoned that the age requirement is within the CDC's statutory authority because it facilitates reliable inspections of imported dogs. Further, the court reasoned that in promulgating the age requirement, the CDC duly considered the relevant issues and reasonably explained its decision. Plaintiffs now appeal from the district court's judgment.

## II.

We review the district court's decision granting summary judgment de novo. Littlefield v. U.S. Dep't of the Interior, 85 F.4th 635, 643 (1st Cir. 2023). Instead of the usual Federal Rule of Civil Procedure 56 standard, however, the summary judgment "rubric . . . has a special twist in the administrative law context." Int'l Junior Coll. of Bus. & Tech., Inc. v. Duncan, 802

F.3d 99, 106 (1st Cir. 2015) (quoting Associated Fisheries of Me., Inc. v. Daley, 127 F.3d 104, 109 (1st Cir. 1997)).  Under the APA, we "hold unlawful and set aside agency action, findings, and conclusions found to be . . . (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . [or] (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706(2).  "Because the APA standard affords great deference to agency decisionmaking and because the Secretary's action is presumed valid, judicial review, even at the summary judgment stage, is narrow."  Littlefield, 85 F.4th at 643 (quoting Visiting Nurse Ass'n Gregoria Auffant, Inc. v. Thompson, 447 F.3d 68, 72 (1st Cir. 2006)).

That said, when we review whether an action was within an agency's statutory authority, we "may not defer to an agency interpretation of the law," Loper Bright Enters. v. Raimondo, 603 U.S. 369, 413 (2024), but "must exercise [our] independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires," id. at 412.  Because the "judiciary is the final authority on issues of statutory construction," id. at 401 (quoting Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 843 n.9 (1984), overruled by, Loper Bright, 603 U.S. 369), we have an "obligation to independently interpret the statute . . . us[ing] every tool at

- 8 -

[our] disposal to determine the best reading of the statute," id. at 400. We are to "interpret statutes, no matter the context, based on the traditional tools of statutory construction." Id. at 403.

When we review whether an agency action is arbitrary or capricious, however, we are "not to substitute [our] judgment for that of the agency" and we only evaluate whether it was "based on a consideration of the relevant factors and whether there has been a clear error of judgment." DHS v. Regents of the Univ. of Cal., 591 U.S. 1, 16 (2020) (first quoting FCC v. Fox Television Stations, Inc., 556 U.S. 502, 513 (2009); and then quoting Citizens to Pres. Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971)). This standard of review is "highly deferential," and we will "uphold an agency determination if it is 'supported by any rational view of the record.'" Littlefield, 85 F.4th at 643 (quoting Marasco & Nesselbush, LLP v. Collins, 6 F.4th 150, 172 (1st Cir. 2021)).

## A. Statutory Authority

Plaintiffs' first argument on appeal is that the age requirement as applied to dogs imported from the Caribbean islands exceeds the CDC's statutory authority under 42 U.S.C. § 264(a). The CDC relied on § 264(a) for the legal authority to impose the age requirement challenged here. 89 Fed. Reg. at 41737. That section states in relevant part:

The Surgeon General, with the approval of the Secretary, is authorized to make and enforce such regulations <u>as in his judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases from foreign countries</u> into the States or possessions . . . . <u>For purposes of carrying out and enforcing such regulations, the Surgeon General may provide for</u> such <u>inspection</u>, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, <u>as in his judgment may be necessary</u>.

42 U.S.C. § 264(a) (emphases added).[2]  The Supreme Court has noted that "[r]egulations under this authority have generally been limited to quarantining infected individuals and prohibiting the import or sale of animals known to transmit disease."  <u>Ala. Ass'n of Realtors</u> v. <u>HHS</u>, 594 U.S. 758, 761 (2021) (citing Ban on Sale and Distribution of Small Turtles, 40 Fed. Reg. 22543 (May 23, 1975) (banning sale of small turtles to prevent the spread of salmonella)); <u>see, e.g.,</u> Control of Communicable Diseases; Restrictions on African Rodents, Prairie Dogs, and Certain Other Animals, 68 Fed. Reg. 62353 (Nov. 4, 2003) (restricting imports and sales of certain animals to prevent the spread of monkeypox).

In <u>Alabama Association of Realtors</u>, the Supreme Court held that § 264(a) likely did not authorize the CDC to extend a

---

[2] The Surgeon General's authority has been delegated to the CDC.  <u>See</u> 42 C.F.R. § 70.2 (2026).

- 10 -

residential eviction moratorium in order to prevent the spread of COVID-19. 594 U.S. at 763-64. The Court stated that the authority granted in the first sentence of § 264(a) -- making and enforcing regulations as "necessary to prevent the introduction, transmission, or spread of communicable diseases" -- is informed by the second sentence of § 264(a). Id. at 763. The second sentence "informs the grant of authority by illustrating the kinds of measures that could be necessary: inspection, fumigation, disinfection, sanitation, pest extermination, and destruction of contaminated animals and articles. These measures directly relate to preventing the interstate spread of disease by identifying, isolating, and destroying the disease itself." Id. Applying the text of § 264(a) to the eviction moratorium, the Court noted that there was a far more indirect, downstream connection between evicting tenants and the interstate spread of disease than "the direct targeting of disease that characterizes the measures identified in the statute. Reading both sentences together, rather than the first in isolation," the Court concluded that it was a "stretch" to read § 264(a) as granting the CDC "authority to impose th[e] eviction moratorium." Id. at 764.

Alabama Association of Realtors instructs that we must review the age restriction at issue here to determine whether it is consistent with the kinds of illustrative measures listed in the second sentence of § 264(a) and whether it directly relates to

- 11 -

preventing the introduction, transmission, or spread of communicable diseases. We conclude that the age restriction is not only consistent with the types of measures described in § 264(a), but is in fact one of the enumerated measures set out in that section: The age requirement is an "inspection" measure. Additionally, we conclude that such measure directly relates to preventing the introduction of rabies into the United States.

The edition of Black's Law Dictionary that was current in 1944, when § 264(a) was first enacted, defined "inspection" as "more than perusal, . . . a critical examination, close or careful scrutiny, a strict or prying examination, or an investigation." Inspection, Black's Law Dictionary (3d ed. 1933); see also Inspection, Funk & Wagnalls New Standard Dictionary (1943) ("The act or process of looking into; especially, a careful critical investigation or scrutiny."); Inspection, Webster's New International Dictionary (2d ed. 1934) ("Act or process of inspecting; a strict or prying examination."). The definition of inspection's root word, "inspect," was "[t]o look, to view or oversee for the purpose of ascertaining the quality or condition of the thing." Inspect, Black's Law Dictionary (3d ed. 1933); see also Inspect, Funk & Wagnalls New Standard Dictionary (1943) ("To examine carefully or critically; investigate and test officially."); Inspect, Webster's New International Dictionary (2d ed. 1934) ("To look upon; to view closely and critically, esp. so

as to ascertain quality or state, to detect errors, etc.; to scrutinize.").

Under these definitions, the CDC's age requirement qualifies as an inspection measure that allows officials "to ascertain the quality or condition of the dogs." U.S. Sportsmen's All. Found. v. CDC, 167 F.4th 813, 819 (6th Cir. 2026). It helps officials conduct a "close or careful scrutiny" or "prying examination" of imported dogs to ascertain their condition or state by making screening for rabies easier. Although "puppies are susceptible to rabies," it can be difficult to screen them for rabies because it is hard to discern whether awkward movements are due to rabies or normal puppy growth and development. See 89 Fed. Reg. at 41766. The age requirement helps officials rule out young age as a reason for any uncoordinated movement patterns that might otherwise potentially signify rabies. Id. As the Sixth Circuit has determined in another case involving a challenge to the same regulation at issue here, "if the officials can rule out age as a cause for the uncoordinated movements, then the officers can more accurately ascertain the condition of the dog." U.S. Sportsmen's All. Found., 167 F.4th at 819.

The age requirement also helps officials ascertain that a "dog is old enough to have been adequately vaccinated for rabies" because veterinarians can have difficulty determining "with specificity whether a dog has reached the age at which it can be

- 13 -

fully protected by the rabies vaccine before six months of age."
89 Fed. Reg. at 41765-66. "Many rabies vaccines are licensed for
use in dogs on or after 12 weeks of age," and laboratories have
suggested that it can take thirty days for the vaccine to become
effective. See id. at 41765. It takes time "to ensure the animal
has developed an adequate antibody response to vaccination." Id.
But "it is difficult to accurately assess the age of dogs that are
between four and six months old due to variability in an individual
dog's dental eruption patterns (loss of baby teeth)." Id. Once
a dog loses its baby teeth by six months old, veterinarians can
then inspect its teeth to accurately assess if it "has reached the
age at which it can be fully protected by the rabies vaccine."
Id. The age requirement is thus an inspection measure that
directly relates to preventing reintroduction of rabies into the
United States.

Plaintiffs object that the CDC's age requirement cannot
be characterized as facilitating an inspection for rabies because
any dog imported from countries that the United States has
recognized as rabies-free "will definitely not be infected with
rabies." This is incorrect for at least two reasons. First,
Plaintiffs fail to recognize that a dog imported from a country
recognized as "rabies-free" could still potentially have rabies
because rabies could have been reintroduced into that country but
not yet discovered. See, e.g., 89 Fed. Reg. at 41787 (citing

- 14 -

Malaysia as an example of a country where, after having previously been recognized as rabies-free, rabies was reintroduced in 2017 and where forty-five people died after having been infected with rabies between 2017 and 2022).  Second, a dog arriving from a country recognized as "rabies-free" could still potentially have rabies if the dog's importer brought the dog from a high-risk country but stopped over in a rabies-free country and then misrepresented the dog's country of origin at a U.S. port of entry.  See id. at 41766 (stating that the CDC has documented numerous instances where dogs under six months old and from countries with a high risk of rabies were routed to the United States through rabies-free countries and then were fraudulently represented as coming from rabies-free countries of origin).  Thus, puppies arriving from countries recognized as rabies-free still pose a risk of carrying rabies.

In response to the CDC's fraud-prevention rationale, Plaintiffs argue that the age requirement is unnecessary to determine that an imported dog matches its documentation because the regulation also imposes a requirement that all dogs be microchipped in order to enter the country.  See id. at 41727. This argument does not get Plaintiffs very far.  Even assuming arguendo that the age requirement does not help officials assess whether a dog matches its proffered documentation, the age requirement still helps officials screen dogs for rabies and

ascertain whether they are old enough to have been adequately vaccinated against rabies. Further, where "[t]he importation of just one dog infected with [rabies] risks reintroduction of the virus into the United States, which could result in loss of human and animal life and substantial public health response costs," id. at 41736, nothing prevents the CDC from using a belt-and-suspenders approach to ensure that the dog presented at a port of entry is the same dog described in its documentation. The CDC retains substantial discretion on what measures are necessary to prevent the reintroduction of rabies into the United States; Congress has directed that whether a measure is "necessary" to prevent the introduction of rabies into the United States is a "judgment" committed to the CDC. See 42 U.S.C. § 264(a).

We also reject Plaintiffs' argument that the age requirement is effectively a prophylactic import prohibition of a broadly defined class (dogs that are less than six months old) that, under 42 U.S.C. § 265, must be accompanied by country-specific findings that there is a "serious danger" of dogs from that country having rabies. Section 265 allows the CDC -- upon making a determination that "there is serious danger of the introduction of" any communicable disease from a foreign country and that this danger "is so increased by the introduction of persons or property from such country that a suspension of the right to introduce such persons and property is required in the

interest of the public health" -- to prohibit "the introduction of persons and property from such countries or places as [it] shall designate in order to avert such danger." 42 U.S.C. § 265. The age requirement, however, is not an import prohibition. It does not prohibit the importation of dogs; rather, it is merely a condition of entry for all dogs being imported. Once puppies are six months old, if they meet all other conditions of entry, they are allowed entry. Because the age requirement is properly viewed as a measure enacted under § 264(a), not a prohibition on the importation of dogs enacted under § 265, the CDC was not obligated to make country-specific findings concerning rabies risk to adopt the age requirement.

Our reading of the age requirement as a condition of entry does not render § 265 superfluous. It is true that § 264(a) and § 265 both authorize the CDC to take preventative measures against the introduction of communicable disease. But "we approach federal statutes touching on the same topic with a 'strong presumption' they can coexist harmoniously." Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz, 601 U.S. 42, 63 (2024) (quoting Epic Sys. Corp. v. Lewis, 584 U.S. 497, 510 (2018)). And here, each provision has effect in distinct cases. See J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc., 534 U.S. 124, 144 (2001) ("[T]his Court has not hesitated to give effect to two statutes that overlap, so long as each reaches some distinct

- 17 -

cases."). Section 264(a) authorizes the CDC to enact measures that identify or isolate infected animals to prevent the introduction or spread of a communicable disease, without regard to whether the communicable disease is known to exist in the animal's country of origin. By contrast, § 265 gives the CDC the power to ban the entry of animals from a foreign country where a communicable disease exists, regardless of whether any specific animals are infected. Thus, a dog could be barred from entry under § 264(a) because it failed disease-prevention-related inspection requirements, even if its country of origin was classified as rabies-free; and a dog could be independently barred from entry under § 265 due to the existence of rabies in its country of origin, even if the dog could otherwise pass all disease-prevention-related inspection requirements. "Where two laws are merely complementary -- as is undisputedly the case here -- our duty lies not in preferring one over another but in giving effect to both." Kirtz, 601 U.S. at 63.

## B.  Arbitrary and Capricious Review

Plaintiffs also argue that the age requirement as applied to dogs imported from Caribbean islands is arbitrary and capricious under the APA. Arbitrary and capricious review "simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision." FCC v. Prometheus Radio

_Project_, 592 U.S. 414, 423 (2021). Although "we must conduct a searching examination to ensure that the agency's decision is reasonably supported by the administrative record," we will -- in our "highly deferential" review -- "uphold an agency determination if it is 'supported by any rational view of the record.'" _Littlefield_, 85 F.4th at 643 (quoting _Marasco & Nesselbush, LLP_, 6 F.4th at 172).

> [W]e will not vacate an agency's decision unless it "has relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."

_Nat'l Ass'n of Home Builders_ v. _Defs. of Wildlife_, 551 U.S. 644, 658 (2007) (quoting _Motor Vehicle Mfrs. Ass'n of the U.S., Inc._ v. _State Farm Mut. Auto. Ins. Co._, 463 U.S. 29, 43 (1983)). Ultimately, an agency simply needs to articulate a "rational connection between the facts found and the choice made." _State Farm_, 463 U.S. at 43 (quoting _Burlington Truck Lines_ v. _United States_, 371 U.S. 156, 168 (1962)).

In its final regulation, the CDC articulated several reasons to support its decision to impose the six-month age requirement. As already discussed, the CDC's primary rationale was that the age requirement would better facilitate efforts to

identify potentially rabid dogs at ports of entry and ensure the effectiveness of rabies vaccinations. See 89 Fed. Reg. at 41765-66. For the same reasons underlying our conclusion that the age requirement facilitates inspection, we agree with the Sixth Circuit that the "age requirement made it easier to spot potentially rabid dogs before they enter the country and ensure that rabies vaccinations were effective. It is reasonable for the CDC to have drawn the conclusions it did on this record." U.S. Sportsmen's All. Found., 167 F.4th at 822.[3]

Plaintiffs primarily attack the CDC's age requirement by arguing that it is overbroad in that it applies to rabies-free countries such as the Caribbean islands. An agency, however, usually need not show that it has adopted the most narrowly tailored option to address its concerns[4]; we are "not to ask whether a regulatory decision is the best one possible or even whether it is better than the alternatives." FERC v. Elec. Power Supply

---

[3] Some other reasons the CDC gave for the age requirement included the ability of dogs older than six months to better endure the "long travel times, temperature fluctuations, oxygen or altitude changes, and food/water deprivation" common in international transport, 89 Fed. Reg. at 41788-89, and the age requirement's alignment with the minimum six-month age requirement for dog imports for commercial purposes under USDA regulations, id. at 41766. These reasons provide additional rational support for the CDC's age requirement.

[4] Of course, regulations must be narrowly tailored in certain circumstances, such as when they impinge on First Amendment rights by effecting "[a] content- or speaker-based restriction on protected speech." Time Warner Cable Inc. v. FCC, 729 F.3d 137, 155 (2d Cir. 2013).

Ass'n, 577 U.S. 260, 292 (2016). Inquiring instead whether the agency's decision was rational, see State Farm, 463 U.S. at 43, we conclude that it is. It is not irrational to conclude that importers may attempt to transport dogs from high-risk countries into the United States through countries in the Caribbean, given their proximity to the United States. The CDC has identified instances of fraud regarding dogs transported through other rabies-free countries including Canada and Mexico, 89 Fed. Reg. at 41766, and it is a reasonable inference that individuals could do the same through Caribbean nations. An agency is allowed to make "a reasonable predictive judgment based on the evidence it had." Prometheus Radio Project, 592 U.S. at 427. This is especially true here, where § 264(a) gives the CDC authority to make "regulations as in [its] judgment are necessary to prevent the introduction . . . of communicable diseases from foreign countries," 42 U.S.C. § 264(a), and where the CDC has noted the extraordinary costs and difficulties of dealing with the importation of just one dog with rabies -- not to mention the risk to lives from such an event, 89 Fed. Reg. at 41754-57.[5] In short,

_____

[5] Plaintiffs' reliance on National Fuel Gas Supply Corp. v. FERC, 468 F.3d 831 (D.C. Cir. 2006), is misplaced. In that case, the D.C. Circuit held that the Federal Energy Regulatory Commission ("FERC") had not provided "evidence of a real problem" where FERC's order at issue did "not include a single example of abuse" by a certain class of entities; rather, any potential for abuse was merely theoretical. Id. at 841. By contrast, here, the analogous class of entities is rabies-free countries, and the CDC has

- 21 -

it was "acceptable for the CDC to regulate across the global board rather than target only high-risk areas." U.S. Sportsmen's All. Found., 167 F.4th at 822.

Plaintiffs relatedly attack the CDC's regulation on the basis that the CDC did not adequately explain how the age requirement could prevent fraud. We disagree. The CDC noted that it had been "document[ing] a marked increase in fraud committed by importers of dogs from [rabies] high risk countries." 89 Fed. Reg. at 41755 (citing numerous sources). The CDC observed that "[m]ultiple international and U.S. investigations have identified importations of puppies that were too young to meet rabies vaccination requirements," and that "reports of . . . underage dogs with fraudulent vaccination records have been documented in the United States and abroad." Id. Specifically, the CDC outlined several instances between 2015 and 2021 where rabid dogs with falsified vaccination documentation were imported into the United States from countries with a high risk of rabies, requiring significant effort and expense to locate, treat, and monitor the persons and animals with whom the rabid dogs had come into contact while infectious. Id. at 41755-56. Further, the CDC noted that

documented examples of importers attempting to fraudulently transport dogs from high-risk countries into the United States through nearby rabies-free countries. Thus, the threat of fraudulent transfer of dogs through the Caribbean rabies-free countries is not simply theoretical, as was the threat of abuse in National Fuel.

it had "documented many instances of young dogs under six months of age being routed from [rabies] high-risk countries through [rabies]-free countries, such as Canada or Mexico, to circumvent U.S. entry requirements," and where the importers "made claims that their dogs had not been in a [rabies] high-risk country." Id. at 41766. It also stated that it had "documented several instances of importers attempting to import an unvaccinated dog using the vaccination paperwork for another dog." Id. at 41767. Given the concerns raised by all these reports of fraud, it was reasonable for the CDC to impose the age requirement for all imported dogs, not just those coming directly from high-risk countries. As the CDC stated, requiring all dogs to be at least six months of age will allow the CDC to "better confirm that the dog presented matches the documentation presented, particularly the age listed for the dog." Id. at 41766.

Plaintiffs argue that the age requirement and other measures imposed by the regulation at issue are not adequate to solve the vaccination-paperwork fraud problem, seemingly implying that the age requirement is underinclusive and thus irrational. Although the age requirement may not be fully adequate to prevent the reintroduction of rabies into the United States, that is beside the point. "We know of no law that prohibits an agency from attacking the evils within its jurisdiction in a piece-meal fashion." BASF Wyandotte Corp. v. Costle, 598 F.2d 637, 663 n.53

- 23 -

(1st Cir. 1979). That the age requirement rationally facilitates identifying potentially rabid dogs at ports of entry, ensuring the effectiveness of rabies vaccinations, and deterring fraud is sufficient. The CDC's action did not need to solve all dog import problems all at once. We further note that the age requirement was not imposed in isolation. It was accompanied by other measures that, taken together, likewise facilitate identifying potentially rabid dogs, ensuring that imported dogs are adequately vaccinated against rabies, and deterring fraud. See 89 Fed. Reg. at 41727–29.

Finally, Plaintiffs' contention that the CDC overlooked Plaintiffs' reliance interests fails as well. When an agency changes its existing policies, it must recognize "that longstanding policies may have 'engendered serious reliance interests that must be taken into account.'" Regents, 591 U.S. at 30 (quoting Encino Motorcars, LLC v. Navarro, 579 U.S. 211, 222 (2016)). "It would be arbitrary and capricious to ignore such matters." Id. (quoting Fox Television Stations, 556 U.S. at 515). Here, in imposing the six-month age requirement, the CDC acted within the zone of reasonableness by considering the relevant issues, including the interests of importers. Contrary to Plaintiffs' argument, the CDC sufficiently accounted for Plaintiffs' reliance interests in their dog rescue efforts in rabies-free countries. After providing opportunity for and

receiving public comments, the CDC stated that it was "provid[ing] additional flexibility and less burden to importers without compromising public health goals" by adopting a six-month age requirement instead of a seven-month age requirement recommended by some in the scientific community.  89 Fed. Reg. at 41765.  The CDC thus "reasonably considered the relevant issues and reasonably explained the decision" in imposing the age requirement.  See Prometheus Radio Project, 592 U.S. at 423.

### III.

For the foregoing reasons, the district court's judgment is **affirmed**.